UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

BRUCE MOTTO,

Plaintiff,

-against-

INCORPORATED VILLAGE OF ROSLYN and
JOHN DURKIN, Sued Herein in his Official Capacity
as the Mayor of the Incorporated Village of Roslyn,

Defendants.

------------------------------------------------------------------------X,

FILED
IN CLERK
U.S. DISTRIC

★   NOV 12 2014

LONG ISLAND OFFICE

**COMPLAINT**

CV 14 Civ 6638

FEUERSTEIN, J

LOCKE, M. J.

## STATEMENT OF PLAINTIFF'S CLAIMS

1. Plaintiff files this action complaining of Defendants for violations of the Americans with Disabilities Act, 42 U.S.C. Section 12131 et seq. and 42 U.S.C. Section 12204 et seq. (hereinafter, "ADA"), and the Rehabilitation Act of 1973, as Amended, 29 U.S.C. § 794 arising out of his difficulty traveling in Roslyn Village because almost all of the Village's parking facilities are not accessible to him, and because the Village's failure to maintain its sidewalks and related facilities in an accessible condition presents inordinate and unreasonable risk to his safety from falling. Plaintiff seeks declaratory and injunctive relief, compensatory damages as well as attorney's fees and costs against the Defendants.

## PARTIES

2. Plaintiff BRUCE MOTTO (hereinafter, "MOTTO") is a resident of East Hills, in Nassau County, New York. MOTTO is an individual with a severe mobility disability to the entire right side of his body caused by a stroke in October 2002. He has total loss of use of his right upper extremity and a marked loss of use of his right lower extremity, including a drop foot and pronounced limp. MOTTO drives a motor vehicle adapted to his disability and also uses a cane to assist him while he walks.

3. Defendant INCORPORATED VILLAGE OF ROSLYN (Hereinafter, "VILLAGE") is a New York State municipal corporation existing under and by virtue of the laws of the State of New York. The VILLAGE is incorporated in Nassau County and is located within the TOWN OF NORTH HEMPSTEAD.

4. Defendant JOHN DURKIN (hereinafter, "MAYOR") is the Mayor of the VILLAGE. He is sued herein in his official capacity because the MAYOR is the appropriate pubic official to ensure that any injunctive relief ordered through this case is implemented.

## VENUE AND JURISDICTION

6. This Court has jurisdiction pursuant to 28 U.S.C. Sections 1331 and 2201 and through the ADA.

7. This Court has venue through the municipal activities of the Defendants in Nassau County, New York.

## ALLEGATIONS COMMON TO ALL CLAIMS

8. Defendant VILLAGE owns or otherwise exerts administrative control over a substantial portion of the roadway and sidewalk infrastructure within the Village of Roslyn. That infrastructure includes public roadways, sidewalks, parking lots and other parking facilities.

9. Defendant VILLAGE created a Department of Public Works which administers the installation, maintenance and repair of public roadways, sidewalks, parking lots and related facilities within the Village of Roslyn.

10. The Village of Roslyn has an historic downtown area on Old Northern Boulevard between Main Street on the west and Northern Boulevard to the east and north.

11. The historic downtown area attracts an extraordinary number of visitors who enjoy its dining, shopping, parks and other destinations.

2

12. One of the VILLAGE's significant municipal infrastructure problems is the lack of sufficient parking to accommodate visitors to the historic downtown area.

13. The VILLAGE provides public parking through a mix of on-street parking and four off-street parking lots.

14. The VILLAGE also maintains and repairs sidewalks within the Village of Roslyn, including the sidewalks along Old Northern Boulevard in the historic downtown area.

15. There are four off-street parking lots that are owned, administered and/or maintained by the VILLAGE. Those lots are on the south side of Old Northern Boulevard in the main strip of downtown Roslyn Village adjacent to Delicacies Gourmet Deli; on Lumber Road across the street from the Old Northern Boulevard lot; on the northwest corner of East Broadway and Old Northern Boulevard; and on Edwards Street located near the southern boundary of the Village of Roslyn off of Warner Street.

**Parking Lot on South Side of Old Northern Boulevard**

16. The parking lot on the south side of Old Northern Boulevard adjacent to Delicacies Gourmet Deli has a total number of fifty-one spaces with two spaces designated as accessible to individuals with disabilities.

17. The minimum number of designated accessible parking spaces required by ADA regulations for a parking lot with fifty-one parking spaces is three designated accessible parking spaces.

18. Each of the fifty-one parking spaces in the parking lot on the south side of Old Northern Boulevard adjacent to Delicacies Gourmet Deli requires payment of money into a parking meter.

19. The parking meter for the two parking spaces designated as accessible in the parking lot on the south side of Old Northern Boulevard near Delicacies Gourmet Deli is set approximately three to four inches above the parking lot surface on an elevated space bordered by bluestone.

3

20. The metal post supporting the parking meter for the two parking spaces designated as accessible in the parking lot on the south side of Old Northern Boulevard near Delicacies Gourmet Deli is set into a surface approximately 35 inches from the adjacent bluestone boundary of the parking lot.

21. The surface upon which the parking meter sits is very uneven with rises and dips in the area of the parking meter.

22. The slot to insert coins into the parking meter for the two parking spaces designated as accessible in the parking lot on the south side of Old Northern Boulevard adjacent to Delicacies Gourmet Deli is approximately 51 inches above the surface of the platform into which it is set.

23. The only pathway from the two parking spaces designated as accessible in the parking lot on the south side of Old Northern Boulevard near Delicacies Gourmet Deli to the adjacent sidewalk is along a pathway that coincides with one of the two driveways into and out of the parking lot.

24. There is no accessible route from the two designated accessible parking spaces in this parking lot which is separate from the driveway for vehicles. The driveway does not have any markings painted on it to indicate that part of the pathway is used for individuals with disabilities and other pedestrians.

25. Parking in the parking lot on the south side of Old Northern Boulevard adjacent to Delicacies Gourmet Deli is coveted. Most hours of each day traffic pours almost continuously into and out of the parking lot. Bushes approximately four feet high separate the parking lot from the sidewalk except at the two driveway entrances into the parking lot.

**Parking Lot on Lumber Road**

26. The parking lot on Lumber Road was very recently constructed. It is located down a steep gradient approximately thirty to one hundred feet from the sidewalk that runs along the north side of Old Northern Boulevard in the main strip of the historic downtown area.

4

27. The gradient from the Lumber Road parking lot to the sidewalk that runs along the north side of Old Northern Boulevard in the main strip of the historic downtown area is greater than a 1:12 gradient.

28. A 1:12 gradient represents one inch of vertical elevation for each 12 inches of walking or rolling surface along pedestrian pathways. A 1:12 pedestrian pathway surface gradient is generally considered by New York State and Federal public infrastructure design regulations to be the maximum gradient recommended for use by individuals with severe mobility impairments.

29. The Lumber Road parking lot has two designated accessible parking spaces for individuals with disabilities. That number of designated accessible spaces meets the minimum number of accessible parking spaces for a parking lot with 26-50 parking spaces.

30. Although the two designated accessible parking spaces in the Lumber Road parking lot are striped blue and have adjacent landing zones, there are no signs which designate the parking spaces as reserved to individuals with disabilities.

31. The lack of signage indicating that the two striped designated accessible parking spaces in the Lumber Road parking lot are reserved for individuals with disabilities impedes the ability of police personnel to successfully prove a violation of law when individuals without disabilities park in those spaces.

32. There is a centralized parking meter to pay for use of this parking lot that is located on a level surface that is accessible to individuals with disabilities which has coin, dollar bill or credit card controls that are located at a height which is accessible to individuals with disabilities.

**Parking Lot on the Northwest Corner of East Broadway and Old Northern Boulevard**

33. This parking lot has twelve parking spaces and is located on the north side of Old Northern Boulevard approximately four to five hundred feet east of the parking lot near the Delicacies Gourmet Deli and the Lumber Road parking lot.

34. None of the twelve parking spaces in the parking lot on the northwest corner of East Broadway and Old Northern Boulevard are designated as accessible to individuals with disabilities or constructed to meet the needs of disabled individuals.

35. This parking lot was newly constructed or has been altered since January 26, 1992.

**Parking Lot on Edwards Street**

36. The parking lot on Edwards Street has nine parking spaces designated as accessible to individuals with disabilities. Four of the nine designated spaces are metered. The other five designated spaces are available to permitted users only. The nine designated accessible parking spaces are sufficient in number to meet federal regulations governing the number of designated accessible parking spaces which must be provided in the Edwards Street parking lot.

37. The parking meters for the four designated accessible metered parking spaces in the Edwards Street parking lot are located on an elevated grassy area bordered by a curb that is approximately six inches above the parking lot surface.

38. The metal posts supporting the parking meters for the four metered parking spaces designated as accessible in the parking lot on Edwards Street are set approximately 35 inches from the adjacent curbed boundary of the parking lot.

39. The slot to insert coins into the parking meters for the four parking spaces designated as accessible in the Edwards Street parking lot are approximately 51-52 inches above the surface of the grassy area into which they are set.

6

40. Of the nine designated accessible parking spaces in the Edwards Street parking lot, none have adjacent landing zones that are at least ninety-six inches wide – the minimum distance deemed by federal regulations to be sufficient to accommodate individuals with disabilities using vehicles equipped with a side exiting lift.

41. Of the nine designated accessible parking spaces in the Edwards Street parking lot, none have an adjacent landing zone that is at least sixty inches wide – the minimum distance deemed by federal regulations to be sufficient for individuals with disabilities exiting from and re-entering into vehicles that do not use side exiting lifts.

42. Some of the nine designated accessible parking spaces in the Edwards Street parking lot have no adjacent landing zone. The widest adjacent landing zone to a designated accessible parking space in the Edwards Street parking lot is approximately 40 inches wide.

43. The Edwards Street parking lot was newly constructed or has been altered since January 26, 1992.

**<u>On-Street Parking</u>**

44. Upon information and belief the VILLAGE maintains approximately 207 metered parking spaces. Over 100 of these metered parking spaces are provided on Old Northern Boulevard in the historic downtown area of the Village.

45. In addition to the metered on-street parking spaces the VILLAGE maintains a substantial number of non-metered parking spaces outside the historic downtown area.

46. Of the over 100 metered on-street parking spaces maintained by the VILLAGE, only two have been designated as accessible spaces reserved for the use of individuals with disabilities.

7

47. One of the two designated accessible metered on-street parking spaces is located on the south side of Old Northern Boulevard approximately 200 feet east of the parking lot adjacent to Delicacies Gourmet Deli.

48. The second designated accessible metered on-street parking space is located on the west side of Old Northern Boulevard just north of Skillman Street.

49. The two designated accessible metered on-street parking spaces referred to above are adjacent to curb ramps.

50. The slot to insert coins into the parking meter for the designated accessible on-street parking space located about 200 feet east of the parking lot adjacent to Delicacies Gourmet Deli is more than 48 inches from the sidewalk surface into which it is set.

51. The parking meter which serves the designated accessible on-street parking space located north of Skillman Street is set in a slab of contract which is raised almost two inches higher than the adjacent slab of concrete due to a nearby tree displacing the concrete slab.

52. The only way for an individual with a disability to place coins in the slot of the meter would be to travel over the raised concrete slab.

53. With respect to the non-metered on-street parking maintained by the Village of Roslyn, only two spaces located on Edwards Street are designated as accessible to individuals with disabilities. Neither of these two non-metered on-street accessible parking spaces are located within 100 feet of a curb cut or ramp.

54. Edwards Street is located approximately one mile from the historic downtown area.

55. There are no designated accessible non-metered on-street parking spaces located within, or in close proximity to, the historic downtown area of Roslyn Village.

56. The road surface of Old Northern Boulevard in the historic downtown area of Roslyn Village was resurfaced since January 26, 1992 at least one time.

57. Upon information and belief, the road surface of Old Northern Boulevard in the historic downtown area of Roslyn Village was resurfaced within five years prior to the filing date of this Complaint.

**Sidewalks Along Old Northern Boulevard in the Historic Downtown Area**

58. The sidewalks on both sides of Old Northern Boulevard in the historic downtown area of Roslyn Village between Main Street and East Broadway were replaced with red bricks within five years prior to the filing date of this Complaint.

59. The bricks have already subsided in multiple spots along the sidewalks, especially around gas and water lines that protrude to the surface of the sidewalk, causing localized depressions.

60. In some areas of the sidewalk, especially where bricks abut concrete driveway aprons and metal grates which surround trees growing out of the sidewalk, bricks have become displaced with respect to adjacent bricks, driveway aprons and tree well covers, creating tripping hazards for the general public and path of travel impediments for individuals with disabilities.

61. The sidewalks on both sides of Old Northern Boulevard between East Broadway and the Roslyn Viaduct are old and decrepit. Many slabs are significantly raised above adjacent slabs of concrete due to tree root growth, drainage and other factors. The raised concrete slabs create tripping hazards for the general public and path of travel impediments for individuals with disabilities.

**Plaintiff's Difficulties Traveling in Roslyn Village**

62. When MOTTO walks he is especially susceptible to tripping and falling on raised ground surfaces and stumbling on uneven ground surfaces. MOTTO benefits from the same accommodations to the design, construction and maintenance of facilities which benefit individuals who use wheelchairs and individuals who are blind or have severe visual impairments.

9

63. It is extremely difficult for MOTTO to climb steps. He generally avoids visiting places where he has to climb a step or climb over an elevation similar to a step.

64. MOTTO's drop foot and right-sided neurological damage makes him prone to falling on raised surfaces that are a hindrance to non-disabled persons. Minor elevation differences between two adjacent sidewalk concrete slabs, or two adjacent sidewalk bricks, can catch the tip of his foot as he walks and cause him to trip and fall.

65. MOTTO is also susceptible to walking surfaces that have non-uniform gradient changes such as dips created where sidewalk concrete slabs or bricks subside or where tree roots cause sidewalks surfaces to rise up.

66. MOTTO's home is in close proximity to Roslyn Village. He drives his adapted car to Roslyn Village two to three times a week to purchase food and other goods and services.

67. When MOTTO travels to Roslyn Village he uses the public parking provided by the VILLAGE and walks on the public sidewalks and roads maintained by the VILLAGE.

68. It is extremely difficult for MOTTO to walk more than 100 feet because of his disability. Consequently he must find parking as close as possible to the places that he travels to in Roslyn Village.

69. MOTTO's most frequent destination in Roslyn Village is the Delicacies Gourmet Deli.

70. Except for an occasional visit to La Bottega restaurant located between East Broadway and the Roslyn Viaduct, all of MOTTO's regular destinations in historic downtown Roslyn Village are to places between Main Street and East Broadway.

71. Even though the two designated accessible parking spaces in the parking lot adjacent to the Delicacies Gourmet Deli are the closest accessible parking spaces, MOTTO always attempts to park on Old Northern Boulevard because it is extremely difficult for him to lift his legs over the bluestone barrier between the parking lot surface and the raised area where the parking meter for

10

those spaces is located. The uneven surface into which the parking meter is set presents an additional tripping hazard to MOTTO.

72. Individuals who use wheelchairs cannot even entertain independent use of the parking meters in this parking lot and in the Edwards Street parking lot because they cannot reach the meters to place coins in them.

73. The only parking space MOTTO can use close enough to the Delicacies Gourmet Deli that does not require him to climb over the curb is the designated accessible metered on-street parking space on the south side of Old Northern Boulevard. That space is frequently unavailable when MOTTO travels to Roslyn Village.

74. When that parking space is unavailable MOTTO will search for a typical parking space that is used by the general public that is as close as possible to his destination. If the space he finds is not adjacent to a curb cut or driveway, he gets up on the curb by pinning his legs and trunk against his vehicle between his vehicle and the curb and using the vehicle as leverage to push his body over the curb.

75. Even though this alternate method or ascending to the sidewalk is very strenuous, MOTTO prefers it to parking in one of the designated accessible parking spaces in the parking lot on the south side of Old Northern Boulevard adjacent to the Delicacies Gourmet Deli because cars must park head in in that parking lot and MOTTO cannot pin his legs and trunk adequately against his car to push his legs over the barrier at the edge of the parking lot.

76. MOTTO cannot use the Lumber Road parking lot because the slope getting up and down to the parking lot from Old Northern Boulevard is way too steep for him to manage.

77. MOTTO does not use the designated accessible on-street parking space north of Skillman Street because it is several hundred yards to a quarter of a mile away from his usual destinations.

78. Insufficient designated accessible on-street and off-street parking for individuals with disabilities has substantially restricted MOTTO's use of Roslyn Village compared to the use available to individuals who do not have disabilities.

79. Due to a combination of inadequate numbers of designated accessible parking spaces, and improperly located and constructed parking spaces and parking meters, MOTTO has effectively been limited to the use of a single designated accessible on-street parking space in the historic downtown area of Roslyn Village. That space, unfortunately, is often unavailable because of use by other individuals with disabilities.

80. The condition of the sidewalks in Roslyn Village creates an undue hazard to MOTTO. Raised and uneven surfaces in the VILLAGE's sidewalks that are easily traversed by non-disabled individuals, present an inordinate risk of injury to MOTTO. Although MOTTO is very careful when he walks along Roslyn Village's sidewalks, he often cannot avoid walking over a raised or uneven surface.

81. The decrepit condition of the sidewalks between East Broadway and the Roslyn Viaduct are so bad that MOTTO won't walk on those sidewalks.

## FOR A FIRST CAUSE OF ACTION
## UNDER TITLE II OF THE ADA

82. Plaintiff re-alleges each of the foregoing allegations in their entirety and incorporates same herein as if fully set forth.

83. Plaintiff is a qualified individual with a disability as that term is defined in 42 U.S.C. § 12131(2) because he uses the VILLAGE's roadways, parking facilities, sidewalks and related infrastructure on a regular basis.

84. Defendant VILLAGE is a public entity under the definition of that term provided in 42 U.S.C.A. § 12131 (1).

12

**SPECIFIC OBLIGATIONS SET FORTH
IN 28 C.F.R. §§ 35.149-35.151**

85. The regulations set forth in 28 C.F.R. Part 35 declare the rights of disabled individuals vis-a-vis public entities and the affirmative duties of public entities towards individuals with disabilities. 28 C.F.R. § 35.149 describes the general obligation of public entities to eradicate discrimination against individuals with disabilities which occur when facilities owned, leased or utilized by public entities are not accessible to individuals with disabilities.

86. 28 C.F.R. § 35.150 requires the VILLAGE to ensure that each of its programs, services and activities are readily accessible to and usable by individuals with disabilities when each public program, activity or service is viewed in its entirety.

87. 28 C.F.R. § 35.151 requires newly constructed and altered facilities to be constructed and altered so that each facility, or portion thereof subject to an alteration, is readily accessible to and usable by individuals with disabilities.[1] The only exceptions to a public entities obligations under 28 C.F.R. § 35.151 occur when it is structurally impracticable for a public entity to make newly constructed facilities readily accessible to and usable by individuals with disabilities, and when it is technically infeasible to make altered facilities readily accessible to and usable by individuals with disabilities. In the event that either one of these exceptions apply, public entities must make the newly constructed or altered facilities accessible to individuals with disabilities to the maximum extent feasible.

---

[1] 28 CFR §§ 35.151(a) and (b) provide as follows:

> (a)  Design and construction. Each facility or part of a facility constructed by, on behalf of, or for the use of a public entity shall be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities, if the construction was commenced after January 26, 1992.
>
> (b)  Alteration. Each facility or part of a facility altered by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility or part of the facility shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities, if the alteration was commenced after January 26, 1992.

88. On-street parking spaces are facilities within definition of the term "Facility" set forth in 28 C.F.R. Part 36, Appendix A § 3.5.[2]

89. Off-street parking spaces are facilities within definition of the term "Facility" set forth in 28 C.F.R. Part 36, Appendix A § 3.5.

90. Sidewalks are facilities within definition of the term "Facility" set forth in 28 C.F.R. Part 36, Appendix A § 3.5.

91. Roadways are facilities within definition of the term "Facility" set forth in 28 C.F.R. Part 36, Appendix A § 3.5.

92. Defendant VILLAGE violated its obligations to Plaintiff and other individuals with disabilities under 28 C.F.R. § 35.151 when Old Northern Boulevard was resurfaced between 25-A and Main Street in the Village of Roslyn after January 26, 1992 without constructing a sufficient number of adequately dispersed on-street parking spaces that are accessible to MOTTO and other individuals with disabilities.

93. The VILLAGE should have installed five to six designated accessible on-street metered parking spaces for MOTTO and other individuals with disabilities.

94. Defendant VILLAGE violated its obligations to Plaintiff and other individuals with disabilities under 28 C.F.R. § 35.151 when the sidewalks along Old Northern Boulevard between Main Street and East Broadway were resurfaced without constructing corresponding curb cuts, curb ramps and other related facilities that support on-street parking facilities required by Title II of the ADA.

95. The VILLAGE should have ensured that all on-street designated accessible parking spaces were accompanied by an accessible route from the parking spaces to adjacent sidewalks, and ensured

---

[2] Facilities are defined as "All or any portion of buildings, structures, site improvements, complexes, equipment, roads, walks, passageways, parking lots, or other real or personal property located on a site."

that all parking meters serving those spaces were located along an accessible route from the metered parking spaces.

96. The VILLAGE should also have maintained and repaired its altered sidewalks so that they continue to comply with the ADA's accessible route obligations.

97. The VILLAGE should also have ensured that sufficient numbers of accessible pedestrian pathways across streets were constructed along all resurfaced roadways.

98. Defendant VILLAGE violated its obligations to Plaintiff and other individuals with disabilities under 28 C.F.R. § 35.151 when it failed to provide any designated accessible parking spaces for individuals with disabilities in the parking lot located on the northwest corner of East Broadway and Old Northern Boulevard.

99. The VILLAGE should have constructed at least one designated accessible parking space and van accessible landing zone in this parking lot, and an accessible route from the parking lot to adjacent sidewalks.

100.     Defendant VILLAGE violated its obligations to Plaintiff and other individuals with disabilities under 28 C.F.R. § 35.151 when it failed to provide adequate landing zones adjacent to the designated accessible parking spaces located in its Edwards Street parking lot, and failed to provide an accessible route from the designated accessible metered parking spaces to adjacent parking meters.

101.     The VILLAGE should have provided at least one van accessible landing zone among the four metered designated accessible parking spaces in this parking lot, and landing zones at least 60 inches wide adjacent to all of the other metered designated accessible parking spaces.

102.     The VILLAGE should have provided parking meters to the four designated accessible metered parking spaces which have coin insert controls within the reach ranges specified by ADA design standards regulations.

103.     The VILLAGE should provide a van accessible landing zone among the five permitted designated accessible parking spaces in this parking lot upon request by any of the permitted users of the five parking spaces, and landing zones at least 60 inches wide adjacent to all of the other permitted designated accessible parking spaces.

104.     Defendant VILLAGE violated its obligations to Plaintiff and other individuals with disabilities under 28 C.F.R. § 35.151 when it failed to provide signs marking the designated accessible parking spaces located in the Lumber Road parking lot.

105.     The VILLAGE should have installed signs at both designated accessible parking spaces in this parking lot with the warning that the spaces are reserved for individuals with disabilities.

106.     Defendant VILLAGE violated its obligations to Plaintiff and other individuals with disabilities under 28 C.F.R. § 35.150 by failing to ensure that its parking services, programs and activities are readily accessible to and usable by Plaintiff and other individuals with disabilities when the parking services, programs and activities are viewed in their entirety.

107.     If the VILLAGE does not have an obligation under 28 C.F.R. § 35.151 to provide accessible on-street and off-street parking spaces and related facilities, then the VILLAGE must provide sufficient numbers of adequately dispersed on-street and off-street parking spaces and related facilities to make its parking services, programs, and activities readily accessible to and usable by MOTTO and other individuals with disabilities when the VILLAGE's parking services, programs and activities are viewed in their entirety.

108.     Defendant VILLAGE violated its obligations to Plaintiff and other individuals with disabilities under 28 C.F.R. § 35.150 by failing to ensure that its sidewalks are readily accessible to and usable by Plaintiff and other individuals with disabilities when its pedestrian pathway and circulation route improvements programs are viewed in their entirety.

109.     The VILLAGE should maintain and repair its existing sidewalks which have not been newly constructed or altered so that the pedestrian travel services, programs and activities provided through the sidewalks are readily accessible to and usable by MOTTO and other individuals with disabilities when those services, programs and activities are viewed in their entirety.

110.     Defendant JOHN DURKIN is the VILLAGE's elected public official who responsible to ensure that each of the programs, activities and services complained of above are provided in accordance with the requirements of Title II of the ADA.

**GENERAL OBLIGATIONS SET FORTH
IN 28 C.F.R. § 35.130 AND 28 C.F.R. § 35.133**

111.     28 C.F.R. § 35.130 imposes general non-discrimination obligations upon all public entities subject to Title II of the ADA.

112.     Among the general obligations imposed upon the VILLAGE by 28 C.F.R. § 35.130 are that 28 C.F.R. § 35.133 obligates the VILLAGE to "...maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part."

113.     28 C.F.R. §§ 35.130(a) and (b) prohibit the VILLAGE from denying MOTTO and other individuals with disabilities an equal opportunity to participate in the VILLAGE parking and pedestrian access services, programs and activities; and from providing parking and

17

pedestrian access services that are not as effective in affording an equal opportunity to benefit

from the parking and pedestrian access services programs and activities:

(a) No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.

(b) (1) A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability—

(i) Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;
(ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;
(iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;
. . . . . . . . .
(v) Aid or perpetuate discrimination against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program.

114.      The VILLAGE violated the rights of Plaintiff and other individuals with disabilities to

be free from discrimination under 28 C.F.R. §§ 35.130 and 35.133 with respect to its sidewalks,

on-street parking and off-street parking facilities complained of above.

**FOR A SECOND CAUSE OF ACTION
UNDER THE REAHBILITATION ACT OF 1973**

115.      Plaintiff re-alleges each of the foregoing allegations in their entirety and incorporates

same herein as if fully set forth.

116.      The VILLAGE is a New York State municipal corporation and a local public entity

which receives federal financial funding for multiple governmental programs, including

transportation programs affecting the sidewalks, roadways and related infrastructure located

within the VILLAGE's boundaries.

117.    For the reasons set forth in Plaintiff's cause of action under the ADA, the Defendants also violated Plaintiff's rights to be free from discrimination on the basis of disability under the Rehabilitation Act.

118.    The discrimination by the VILLAGE was intentional and/or deliberately indifferent to the rights of Plaintiff and other individuals with disabilities. As a direct consequence thereof, MOTTO has been repeatedly been frustrated in his inability to enjoy an equal opportunity to use the parking, roadways and sidewalks in the VILLAGE, sustained bodily harm to his knee from struggling to gain access onto the sidewalks, and placed in apprehension of bodily harm, and thereby sustained compensable injury to his civil rights under the Rehabilitation Act.

119.    Defendant JOHN DURKIN is the VILLAGE's elected public official who responsible to ensure that each of the programs, activities and services complained of above are provided in accordance with the requirements of the Rehabilitation Act.

## INJUNCTIVE RELIEF

120.    Injunctive relief is necessary to order the Defendants to cease their violations of the ADA and the Rehabilitation Act, and to provide Plaintiff with the rights afforded to him under those federal laws. That relief must include provision of parking spaces, sidewalks and related facilities in accordance with the requirements of the ADA and Rehabilitation Act as more explicitly set forth in paragraphs 92-109 of this Complaint.

## DECLARATORY RELIEF

121.    Plaintiff is entitled to a declaratory judgment specifying each of the ADA and Rehabilitation Act violations committed by the Defendants and each of the Plaintiff's rights to relief as against the Defendants under those federal laws.

### DAMAGES

122.      Plaintiff requests TWENTY FIVE THOUSAND DOLLARS ($25,000.00) in compensatory damages under the ADA and the Rehabilitation Act against Defendant VILLAGE for its intentional, willful and/or deliberately indifferent unlawful conduct which caused compensable injury to his civil rights.

### ATTORNEYS' FEES AND COSTS

123.      Plaintiff had to retain the undersigned counsel in order to enforce his rights under the ADA and the Rehabilitation Act. The undersigned counsel is entitled to recover attorneys' fees, costs and expenses if MOTTO prevails in this lawsuit.

### JURY DEMAND

124.      Plaintiff hereby demands trial by jury on the issue of damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief from the Court:

A.      Issue a permanent injunction against the Defendants requiring their agents, servants and employees, and all persons or entities in active concert therewith, to provide Plaintiff with the rights afforded to him under Title II of the ADA and the Rehabilitation Act of 1973. That relief must include provision of parking spaces, sidewalks and related facilities in accordance with the requirements of the ADA and Rehabilitation Act as more explicitly set forth in paragraphs 92-109 of this Complaint.

B.      Enter declaratory judgment in favor of the Plaintiff specifying his rights under Title II of the ADA and the Rehabilitation Act of 1973 as against the Defendants and specifying the Defendants' violations of the ADA and Rehabilitation Act.

C.  Award Plaintiff compensatory damages in the sum of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00).

D.  Find that Plaintiff is a prevailing party in this lawsuit and award attorneys' fees, costs and expenses against the VILLAGE, and award such other and further relief, at law or in equity, to which the Plaintiff may be justly entitled.

Dated:      Woodbury, New York
            November 10, 2014

Martin J. Coleman, Esq.
Law Office of Martin J. Coleman, P.C.
100 Crossways Park West, Suite 412
Woodbury, New York 11797
(516) 802-5960